UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

*FILED*

*29 SEP 23 PH 1: 19*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

RANDALL ROBISON, BRENDA    }
ROBISON,                   }
                           }
    Plaintiffs,            }
                           }
                           }        CASE NO. CV 97-B-0816-S
v.                         }
                           }
                           }       **ENTERED**
DEAN WITTER REYNOLDS, INC.,}
                           }        SEP 2 3 1999
    Defendant.             }

**MEMORANDUM OPINION**

This case is before the court on plaintiff Robisons' Motion To Reinstate Action And To

Modify Or Vacate Arbitration Award and Dean Witter Reynolds Inc's Motion To Confirm

Arbitration Award.  Upon consideration of the record, the relevant law, and the submissions of

the parties the court finds that plaintiffs' Motion To Reinstate Action will be granted, plaintiffs'

Motion To Modify Or Vacate Arbitration Award is due to be denied, and defendant's Motion To

Confirm Arbitration Award is due to be granted.

**FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

On April 2, 1997, Mr. Robison filed the present lawsuit for unsuitable, excessive, and

unauthorized trading against Dean Witter.  Two days later, Kenneth H. Looney, the Trustee for a

Dean Witter brokerage account established for the benefit of the Robisons' minor daughter,

Michel, filed an identical complaint regarding that trust account in the Circuit Court of Jefferson

County, Alabama.  Dean Witter removed that action to the Northern District of Alabama as

*Kenneth H. Looney, as Trustee for Michel Robison, v. Dean Witter Reynolds Inc.*, CV 97-S-

1122-NE.  Dean Witter filed motions to compel arbitration in both actions.  The attorney

representing the Robisons and Mr. Looney notified counsel for Dean Witter that the plaintiffs did not oppose the motions to compel arbitration.

The *Robison* and *Looney* arbitration cases were consolidated for purposes of hearing and award before an arbitration panel of the National Association of Securities Dealers ("NASD"). Benjamin Pearce, the Dean Witter broker for the Robisons' accounts, was named as a respondent in the consolidated arbitration proceeding. Mr. Pearce is not a party to this lawsuit. Mr. Robison was the only party present at the hearing to represent the Robison-related accounts. At the hearing, counsel for the Robisons and Mr. Looney submitted a Trial Brief stating that "[t]here is only one issue in the case: *Is the Robison's testimony, or Pearce's, to be believed?* ... The panel must decide whether to believe the Robisons, or Pearce, and decide the case for whom they believe." *See* Claimant's Trial Brief at 9-10 (emphasis in original).

After hearing and considering almost three days of evidence and arguments from both sides, the arbitration panel entered an award dismissing all claims against Dean Witter and Benjamin Pearce. The Robisons have now moved to reinstate the action originally filed in this court and to vacate the arbitration award dismissing their claims.

## STANDARD OF REVIEW

"Judicial review of arbitration awards is 'narrowly limited,' and the FAA presumes that arbitration awards will be confirmed." *Gianelli Money Purchase v. ADM Investor Services, Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998). Only a narrow review is allowed in order to protect arbitration's twin goals of efficiency and economy. *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). Courts are not to vacate arbitration awards except in the rare instances when the arbitrators commit an egregious error, make an irrational award, or exceed a specific contractual limitation on the scope of their authority. *Ierna v. Arthur Murray Int'l, Inc.*,

833 F.2d 1472, 1476-77 (11th Cir. 1987).

"The showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof." *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,* 157 F.3d 174, 175 (2nd Cir. 1998). Thus, Dean Witter, as the party defending the award, does not have to prove that the award should be confirmed. This allocation of the burden of proof is designed to promote the efficiency and expediency goals of the FAA. *See O.R. Securities, Inc. v. Professional Planning Assoc., Inc.,* 857 F.2d 742, 745-46 (11th Cir. 1988). In the context of an action to vacate an arbitration award, this court's analysis is somewhat different from the typical motion for summary judgment. The Robisons must affirmatively prove to the court at this stage of the case that the arbitration award at issue must be vacated. If the burdens were allocated otherwise, a simple motion to vacate an arbitration award could easily develop into a "full scale litigation," which is contrary to the efficiency aims of the FAA. *See O.R. Securities, Inc,* 857 F.2d at 745-46.

## DISCUSSION

Plaintiffs argue that this court should Modify or vacate the Arbitration award because the award was arbitrary and capricious, in contravention of public policy, and entered in manifest disregard of the law. They also argue that the award should be modified or vacated due to the evident partiality of the arbitrators.

### 1. Non-Statutory Grounds

A party may challenge an arbitration award on non-statutory grounds if the award is (1) arbitrary and capricious; (2) in contravention of public policy; or (3) entered in "manifest disregard for the law." *Scott v. Prudential Securities, Inc.,* 141 F.3d 1007, 1017 (11th Cir. 1998). Plaintiffs challenge the award granted in arbitration on all three grounds in their motion.

**a.    Arbitrary and capricious**

Courts are permitted to vacate an arbitration award in two kinds of cases under the arbitrary and capricious standard. The first type of case is when the award exhibits a wholesale departure from the law. *See Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 781 (11th Cir. 1993). The second case type is when the arbitration award is not grounded in the contract which provides for the arbitration. *Id.* Plaintiffs argue that the award of the arbitration panel departed from the law: "[u]nder the Statute, [830-X-3-.12], since he violated the Rule he is liable for the loss, interest, attorney's fees and costs. The arbitration panel knew this well." The plaintiffs also assert that this since was the first account opened by the plaintiffs with a brokerage firm, and that since Mr. Robison was received his high school degree at a late age, and also since he was "functionally illiterate" that he was an unlikely candidate for this type of speculation. Thus, plaintiffs' assert that the arbitration panel's decision was based on whether the panel believed that the recommendations were made by the broker, or by the plaintiffs. The arbitration panel found that plaintiffs made the decisions to buy the stock, and therefore, found defendant not liable for the losses incurred.

Plaintiffs argue that the panel's decision should be found arbitrary and capricious on these bases. First, they assert that the Adtran investments in the Robison-related accounts must have been directed by Benjamin Pearce because the trading activity was virtually identical to Adtran trading in Mr. Pearce's account. Second, the Robisons assert that the Adtran investments were directed by Mr. Pearce because the trade tickets were marked "solicited." Finally, the Robisons assert that Mr. Robison could not have directed the Adtran investments himself because he was uneducated and an unlikely candidate for speculative securities trading. During the hearing, however, the defendant asserts that the arbitrators heard a great deal of evidence that soundly

refute the claims asserted by plaintiffs.  The following are factors on which the defendant argues

that the arbitrators may have based their decision:

- Benjamin Pearce discouraged Mr. Robison from trading so heavily in Adtran stock.  One of these warnings occurred in February 1996, after the price of Adtran stock had dipped substantially and Mr. Robison had received margin calls.  Despite advice from Mr. Pearce and Don Dickson that Mr. Robison reduce his Adtran holdings and eliminate his margin debt, Mr. Robison responded that he would go forward and that he would be responsible for all further purchases of Adtran.  As of that time, evidence submitted to the arbitrators demonstrated that the Adtran holdings had experienced a net gain of over $38,000.

- In June 1996, Mr. Pearce again strongly advised Mr. Robison to reduce his position in the Adtran stock.  At the time of this warning, the evidence established that the Adtran holdings in the Robison-related accounts had experienced a net gain of over $620,000.  Another such warning was given in January 1997.

- Other daytimer notes from Benjamin Pearce and Don Dickson, Mr. Pearce's branch manager, corroborate the Respondents' statements that they repeatedly advised Mr. Robison not to trade in Adtran stock so heavily.  Mr. Dickson's notes reflect that he met with Mr. Robison and told him that it was unwise to use margin so heavily and to be so highly concentrated in Adtran stock.  Mr. Pearce's notes contain similar entries.

- Mr. Robison's hands-on management of his brokerage accounts was further proven by Dean Witter's records of numerous telephone conversations between Mr. Robison and Benjamin Pearce.  These records were consistent with Mr. Robison's own telephone billing statements showing approximately 1,000 telephone calls that he placed to Mr. Pearce at Dean Witter in 1996 alone.  The frequency of calls, almost all of which were initiated by Mr. Robison, belie his claims that Mr. Pearce was making unauthorized and unsuitable trades in the Robison-related accounts.

- The trading in Mr. Robison's account was really not that similar to Mr. Pearce's trading.  The accounts went on margin at different times.  There were different buy-sell patterns between the two accounts.  Mr. Robison had a high of approximately 36,000 shares of Adtran; Mr. Pearce's high was only 9,000 shares.  Mr. Pearce also had some option investment activity in his account; this type of investing was absent in Mr. Robison's accounts.  In any event, even if Mr. Robison's trading patterns were somewhat similar to Mr. Pearce's, it would not prove that Mr. Pearce

encouraged Mr. Robison to emulate him.

- Mr. Pearce testified that he did not use the "solicited" notation on trade tickets to mean that he recommended the transaction. Rather, pursuant to Dean Witter's internal policies, "solicited" was used only to indicate that Mr. Pearce gave some information to Mr. Robison that led to a transaction. The undisputed evidence also established that the term "solicited" is quite different than the term "recommended" and it is only the latter term which triggers the suitability rules. This use of the "solicited" notation was confirmed by testimony from John R. Smith, an expert witness with over 20 years of experience in the securities industry. Mr. Pearce's use of the "solicited" notation was also confirmed by Ralph Jones, Mr. Robison's current broker at another securities firm. Mr. Jones was called as a witness by Mr. Robison and testified that he marked trade tickets the same way as Mr. Pearce, using the same interpretation of the "solicited" notation. Mr. Robison's business partner, Wade Copeland, also testified that he initiated trades in his account that Mr. Pearce marked "solicited."

- Even after he filed this lawsuit claiming that Benjamin Pearce caused him to invest heavily in Adtran stock, Mr. Robison contacted Mr. Pearce to instruct him to buy still more Adtran stock. When Mr. Pearce refused to follow Mr. Robison's instructions, Mr. Robison transferred his account to another brokerage firm, Robinson Humphrey, and a broker, Ralph Jones, who is related to the CEO of Adtran. Mr. Robison instructed his new broker to purchase more Adtran stock. Ralph Jones testified that he urged Mr. Robison to sell some of his Adtran stock and to diversify his accounts but Mr. Robison refused to do so.

- Mr. Robison was by no means an uneducated, unsophisticated, risk-averse investor. Mr. Robison's own business partner, Wade Copeland, was called as a witness by Mr. Robison. Mr. Copeland testified that Mr. Robison was an astute businessman with an uncanny knack for numbers. Mr. Copeland further testified that Mr. Robison was not conservative by nature. Ralph Jones, Mr. Robison's new broker, testified that Mr. Robison invested in other speculative stocks at Robinson Humphrey.[1]

The defendant has asserted that the arbitration panel in this case considered evidence in

the form of testimony and documents demonstrating that Mr. Robison controlled all of the

---

[1] Defendants contend that the above noted evidence was submitted to the arbitration panel. Neither party submitted a copy of the transcript before the panel to the court. Because plaintiffs did not dispute that this evidence was presented to the panel, the court will assume for purposes of this opinion that the panel was presented with this evidence.

trading in his accounts and did so even against the advice of Dean Witter. An arbitration award is arbitrary and capricious only if "a ground for the arbitrator's decision can[not] be inferred from the facts of the case." *Raiford v. Merrill, Lynch, Pierce, Fenner, & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir. 1990); *Scott*, 141 F.3d at 1017. The court finds that this evidence provided a reasonable basis for the arbitrators' decision.

Plaintiffs' arguments regarding the arbitrary and capricious nature of the arbitration award do not establish that the arbitration panel lacked a reason for its decision. The panel's award must contain more than an error of law or interpretation. *Brown*, 994 F.2d at 781. Rather, there must be no ground for the decision. *Id.* Without clear and specific references to record evidence demonstrating the absence of any ground from which the arbitrators' decision may be inferred, the Robisons' Motion to Vacate must be denied.

**b.     Contravention of Public Policy**.

Plaintiffs also argue that the arbitration award was in contravention of public policy. The plaintiffs' argument that the award contravenes public policy falls outside the narrow band of review permitted under this non-statutory grounds for vacatur. The Supreme Court has held that there is no far-reaching judicial power to vacate arbitration awards as being violative of public policy. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). The public policy exception to the enforcement of arbitration awards allows courts to refuse to enforce arbitration awards where enforcement "would violate 'some explicit public policy' that is 'well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Brown*, 994 F.2d at 782(citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 43 (1987)). The public policy exception is typically implicated when enforcement of the award compels one of the parties to

take action which directly conflicts with public policy. *Id*.

The public policy exception is inapplicable here because the award plaintiffs seek to vacate does not compel either party to take action which conflicts with public policy. *Id*. Essentially, plaintiffs argue that the arbitrators failed to interpret the law correctly. They state that, "[t]he award was in contravention of public policy. The Alabama Securities Act is a version of the Uniform Securities Act, which prevails in some 42 of the United States. §8-6-19(a)'s statutory strict-liability provisions are essential to the enforcement of the Act. They are in fact its core. The need for such statutes, both to protect the public and to prevent another economic disaster like the Great Depression that inspired the federal predecessors of the Uniform Securities Act, is widely recognized." (Pl. Br. at 7). This argument is insufficient to establish that the award of the arbitrators was in contravention of public policy.

### c.    **Manifest Disregard for the law**

Plaintiffs' third, and final, non-statutory ground for setting aside the arbitration panel's award is that the award was in manifest disregard for the law.    In order to justify the vacatur of an arbitral award based on the manifest disregard of the law concept, the Robisons must meet an extremely heavy burden of proof and prove the panel consciously and deliberately ignored the law. *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1461-62 (11th Cir. 1997). "To vacate an award on the ground that the panel manifestly disregarded the law, 'there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it.'" *Brown*, 994 F.2d. at 782 n.7(citing *O.R. Securities v. Professional Planning Assoc., Inc.,* 857 F.2d 742, 747 (11th Cir. 1988)).  This means much more than showing the arbitration panel erred in interpreting the law. As the Eleventh Circuit said in *Montes*, "An arbitration board that incorrectly interprets the law has not manifestly disregarded it.

It has simply made a legal mistake.  To manifestly disregard the law, one must be conscious of the law and deliberately ignore it."  *Id.* at 1461.  *See Merrill, Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) (holding that the alleged "manifest disregard of the law" must be something more than a mere error of law or a poor panel decision).

There is no evidence before the court that the arbitration panel knew the law but deliberately ignored it.  Therefore, the Motion to Vacate on this ground is due to be denied as well.

## 2.  Statutory Ground of Evident Partiality

Beyond the non-statutory grounds for setting aside an arbitration award, there are also statutory grounds for setting aside an arbitration award.  Under the FAA, arbitration awards are to be vacated only when:  (1) an award is procured by corruption, fraud, or undue means; (2) the arbitrators displayed evident partiality or corruption; (3) the arbitrators were guilty of specific types of misconduct; or (4) the arbitrators exceeded or so imperfectly executed their powers that a final and definite award was never rendered.  *See* 9 U.S.C. § 10(a).  The only statutory ground argued by plaintiffs in this case is evident partiality.  Section 10 of the FAA permits vacatur where there was evident partiality or corruption in the arbitrators.  *Scott*, 141 F.3d at 1015.

"Evident partiality," a concept not even defined within the FAA,[2] will be found to exist only where "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *See Local 814, Int'l Brotherhood of Teamsters v. J & B Systems Installers & Moving, Inc.*, 878 F.2d 38, 40 (2d Cir. 1989) (quoting *Morelite Constr. Corp. v. New*

---

[2]*See Int'l Bhd. of Elec. Workers, Local Union No. 323 v. Coral Elec. Corp.*, 104 F.R.D. 88, 89 (S.D. Fla. 1985) ("[e]vident partiality, like obscenity, is an elusive concept: one knows it when one sees it. . . . No jurist has yet coined an exacting legal standard for 'evident partiality,' although many have tried.").

*York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984)). Moreover, "federal courts have concluded that evident partiality may not be shown by alleged procedural or evidentiary errors, by legitimate efforts to move the case along, or by failure to follow the rules of evidence." *Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F. Supp. 52, 56 (S.D.N.Y. 1997) (citation omitted). Rather, the alleged partiality must be supported by proof of acts/omissions that are "direct, definite and capable of demonstration rather than remote, uncertain, and speculative." *See Gianelli Money Purchase v. ADM Investor Services, Inc.*, 1465 F.3d 1309, 1312 (11th Cir. 1998). The Robisons did not cite any instance or provide proof of any act or omission demonstrating evident partiality.

To vacate arbitration award for evident partiality, the moving party must present evidence that would support a "reasonable impression of partiality" on the arbitrator's behalf. *Scott,* 141 F.3d at 1015. The assertion of partiality, however, must be direct, definite, and capable of demonstration rather than remote, uncertain, and speculative. *Id.* Courts have explained that an arbitrator's experience in an industry, far from requiring a finding of partiality, is one of the factors that can make arbitration a superior means of resolving disputes. *Id.* at 1016(citing *Commonwealth Coating Corp. v. Continental Cas. Co.,* 393 U.S. 145, 150 (1969)). Plaintiffs' claims are "vague, remote, and speculative" and cannot support an order to vacate an arbitration award. *See id.*

## CONCLUSION

Based upon the foregoing conclusions, the court finds that plaintiffs' Motion To Modify Or Vacate Arbitration Award is due to be denied, and defendant's Motion To Confirm Arbitration Award is due to be granted. The court will grant plaintiffs' Motion to Reinstate this Action in order to allow plaintiffs to take an appeal from the court's Order if they desire. An

Order in accordance with this Memorandum Opinion will be entered contemporaneously

herewith.

**DONE** this _3rd_ day of September, 1999.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge